UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| AMADA AGUIRRE, | ) No. ED CV 08-1176-PLA |
| Plaintiff, | ) |
| v. | ) **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) |
| Defendant. | ) |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on August 29, 2008, seeking review of the Commissioner's denial of her application for Disability Insurance Benefits. The parties filed Consents to proceed before the undersigned Magistrate Judge on September 12, 2008, and September 15, 2008. The parties filed a Joint Stipulation on June 26, 2009, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on September 13, 1940. [Administrative Record ("AR") at 72.] She has no formal education [AR at 92], and has past relevant work experience as a housekeeper and caretaker. [AR at 87, 98-99.]

Plaintiff filed her application for Disability Insurance Benefits on July 1, 2003, alleging that she has been unable to work since January 27, 2003, due to, among other things, shoulder and back injuries and diabetes. [AR at 17, 75-77, 85-94.] After her application was denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 25-35.] A hearing was held on July 5, 2005, at which plaintiff appeared without representation and testified, through an interpreter, on her own behalf. [AR at 270-80.] A vocational expert also testified. [AR at 278.] On August 10, 2005, the ALJ determined that plaintiff was not disabled. [AR at 14-22.] Plaintiff requested review of the hearing decision. [AR at 9.] On June 6, 2006, the Appeals Council denied plaintiff's request for review. [AR at 4-8.] Plaintiff filed an action with this Court on July 20, 2006, to challenge the ALJ's decision. (Case No. ED CV 06-779-PLA). On February 12, 2007, plaintiff and defendant filed a Stipulation to Voluntary Remand (the "Stipulation") with the Court, and agreed that the case be remanded to complete the medical evidence, reconsider the severity of plaintiff's impairments in light of the updated medical evidence, reconsider and weigh the medical source opinions, and reconsider plaintiff's credibility. [AR at 449-50.] On February 14, 2007, the Court remanded the action pursuant to the Stipulation. [AR at 446-48.] On November 21, 2007, the Appeals Council vacated and remanded the case for further proceedings. [AR at 290-94.] A supplemental administrative hearing was held on May 14, 2008, at which time a vocational expert and two medical experts testified. [AR at 451-62.] On June 19, 2008, the ALJ again determined that plaintiff was not disabled. [AR at 281-89.] On approximately August 19, 2008, the ALJ's decision became the final decision of the Commissioner. [Joint Stipulation ("JS") at 2.] This action followed.

/

/

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the

claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff has not engaged in any substantial gainful activity since January 27, 2003, the alleged onset date of the disability.[1] [AR at 285.] At step two, the ALJ concluded that plaintiff has the following "severe" impairments: "right shoulder tendonitis with degenerative changes of the acromioclavicular joint, degenerative joint disease of the left shoulder, right carpal tunnel syndrome, degenerative disc and joint disease of the lumbar

---

[1] The ALJ also determined that plaintiff was insured for Disability Insurance Benefits purposes through March 31, 2007. [AR at 285.]

4

spine, degenerative disc disease of the cervical spine, noninsulin dependent diabetes mellitus with peripheral neuropathy, hypertension, and depressive disorder, not otherwise specified." [AR at 285-86.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [AR at 286-87.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform medium work,[3] "except no overhead reaching with either arm." [AR at 287.] At step four, the ALJ concluded that plaintiff was capable of performing her past relevant work. [AR at 288-89.] Accordingly, the ALJ determined that plaintiff is not disabled. [AR at 289.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ failed to properly consider: (1) the opinion of plaintiff's treating physician, Dr. Munir Uwaydah, and the psychological assessment of Dr. B. John Shahin; (2) plaintiff's credibility; and (3) the lay witness statements of plaintiff's daughter, Raquel Acosta. [JS at 4-8, 13-16.] As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**A.   PLAINTIFF'S CREDIBILITY**

Plaintiff contends that the ALJ failed to properly consider plaintiff's testimony and failed to make proper credibility findings. [JS at 13-16.] Whenever an ALJ discredits a claimant's testimony regarding subjective symptoms, including degree of pain and functional limitations, the ALJ must make explicit credibility findings. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993) (if the ALJ does not accept a

---

[2]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[3]   Medium work is defined as work involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

claimant's testimony, he must make specific findings rejecting it). The ALJ can reject a claimant's allegations "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003); see Lester, 81 F.3d at 834 (the ALJ must provide clear and convincing reasons for discrediting a claimant's testimony as to severity of symptoms when there is medical evidence of an underlying impairment). The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c). "It is not sufficient for the ALJ to make only general findings." Dodrill, 12 F.3d at 918. Absent evidence showing that a plaintiff is malingering, the ALJ must clearly identify evidence in the record undermining the plaintiff's testimony to properly discredit his alleged limitations. See id.; see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.") (quoting Lester, 81 F.3d at 834). If properly supported, the ALJ's credibility determination is entitled to "great deference." See Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

As the record contains no evidence of malingering by plaintiff,[4] the ALJ was required to justify his credibility determination with clear and convincing reasons. See Benton, 331 F.3d at 1040. In the decision, despite finding that plaintiff's medical condition would reasonably produce some of plaintiff's alleged symptoms, the ALJ found plaintiff's "statements concerning the intensity, persistence and limiting effects" of her symptoms to be not entirely credible. [AR at 287.] The ALJ discredited plaintiff's subjective symptoms because he found that (1) the objective medical

---

[4] The ALJ made no finding that plaintiff was malingering, nor does the evidence suggest plaintiff was doing so.

6

evidence indicated that her neck, back, and shoulder problems "have been of minimal to mild severity;" (2) plaintiff "declined recommended surgery;" and (3) she received conservative medical treatment. [AR at 287.] As discussed below, the Court has considered the ALJ's reasons for discrediting plaintiff's subjective symptoms, and finds that they are neither clear nor convincing.

An ALJ cannot rely solely on an absence of disability findings to reject a plaintiff's credibility. See Bunnell v. Sullivan, 947 F.2d 341, 345-47 (9th Cir. 1991) (an "adjudicator may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.") (emphasis added). A claimant need not produce evidence of pain other than her own subjective testimony. Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996) ("The claimant need not produce objective medical evidence of the pain or fatigue itself, or the severity thereof."). Nor must a claimant present objective medical evidence of a causal relationship between the impairment and the type of symptom. See id. at 1282; see also Johnson v. Shalala, 60 F.3d 1428, 1433 (9th Cir. 1995) ("[O]nce an impairment is medically established, the ALJ cannot require medical support to prove the severity of the pain."). Rather, the claimant need only "produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Bunnell, 947 F.2d at 344 (internal quotations omitted). This approach reflects the Ninth Circuit's recognition of the "highly subjective and idiosyncratic nature of pain and other such symptoms," Smolen, 80 F.3d at 1282, such that "[t]he amount of pain caused by a given physical impairment can vary greatly from individual to individual." Id. (internal quotations omitted).

Plaintiff's medical records document her complaints of back pain as well as "constant moderate to severe popping and burning sensation in her posterior neck which radiates to both shoulders" and a "constant burning pulsing sensation in her . . . shoulder[s] radiating down to her hand[s]." [AR at 233.] The objective medical evidence demonstrates that plaintiff suffered from physical impairments in her shoulders, lumbar spine, cervical spine, right arm, and left hand and wrist. [AR at 142-43, 216-20, 222-30, 357-66, 431-35.] Because plaintiff produced medical evidence of underlying impairments that the ALJ determined would produce some of her alleged

symptoms, objective medical findings are not required to support their alleged severity. Bunnell, 947 F.2d at 344-45. Thus, a lack of corroborating objective evidence was an insufficient reason, on its own, for the ALJ to find plaintiff incredible. As discussed below, no other valid reasons were provided by the ALJ.

The ALJ's assertion that plaintiff declined surgery was also inadequate to undermine plaintiff's credibility. Failure to follow a prescribed treatment that would ameliorate an impairment, without good reason, is a valid basis for denying benefits. 20 C.F.R. §§ 404.1530(b), 416.930(b). The ALJ found that plaintiff "declined recommended surgery, saying she was afraid she would get worse, which is not a valid reason for declining such treatment since it is not unduly dangerous and there is no indication of any medical contraindications." [AR at 287.] First, the ALJ's determination was erroneous because it is improper to deny benefits on the basis of declined surgery, when surgery is only a *suggested* rather than a *prescribed* course of treatment. See Teter v. Heckler, 775 F.2d 1104, 1107 (10th Cir. 1985) (a claimant's refusal to undergo surgical treatment is not a sufficient reason to deny benefits where surgery was at most recommended or suggested but not prescribed by a physician); see also Young v. Califano, 633 F.2d 469, 472-73 (6th Cir. 1980) (unwillingness to undergo a suggested surgery does not constitute failure to follow prescribed treatment); 20 C.F.R. §§ 404.1530(a)-(b), 416.930(a)-(b) ("In order to get benefits, you must follow treatment *prescribed* by your physician . . . [and] [i]f you do not follow the *prescribed* treatment without a good reason, we will not find you disabled.") (emphasis added). In this case, although plaintiff's testimony reflects that her doctors may have suggested the possibility of surgery, the medical evidence does not indicate that surgery was ever prescribed. "That various physicians suggested [an] operation does not necessarily mean that they prescribed it." Schena v. Health & Human Services, 635 F.2d 15, 19 (1st Cir. 1980). In fact, the only evidence found by the court or noted by the parties indicating that plaintiff's doctors even suggested that she undergo surgery was her testimony that "they wanted to operate on me." [AR at 276.]

Moreover, there was in fact medical evidence justifying plaintiff's fear that surgery could make her condition worse. At her hearing, plaintiff testified that she did not want surgery because "I have the diabetes real high, and I'm afraid that [surgery] will do more damage." [AR at 276.]

On October 8, 2003, Dr. Farjad Sarafian did not medically clear plaintiff to undergo epidural injections due to her "multiple cardiac risk factors including but not limited to her age, postmenopausal status, **history of diabetes**, history of hypertension and her history of hyperlipidemia along with [her] alarming symptoms including dyspnea on exertion and paroxysmal nocturnal dysnea." (emphasis added). [AR at 356.][5] Dr. Sarafian also advised that plaintiff receive "further cardiac evaluation prior to undergoing any type of surgical procedures." [Id.] Plaintiff's medical records do not indicate that she was later cleared for surgery. Since the evidence indicates that plaintiff was neither prescribed surgery nor approved for surgery, the ALJ erred in finding plaintiff incredible because she did not undergo such surgery.

The ALJ also did not provide adequate reasons, based on the extent of plaintiff's medical treatment, for finding her incredible. The ALJ asserted that plaintiff pursued only "conservative" medical treatment, "consisting of hydrotherapy and chiropractic treatment," and noted that she apparently stopped taking Ultram, a prescribed pain killer, when her worker's compensation claim terminated. [AR at 287.] An ALJ may rely on a claimant's conservative treatment regimen to reject a claimant's testimony of disabling limitations or disabling pain. See Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989) (an ALJ may rely on a claimant's conservative treatment regimen to reject a claimant's testimony of disabling limitations or disabling pain); see also Johnson, 60 F.3d at 1434 (that the claimant received only conservative treatment for back injury is a clear and convincing reason for disregarding testimony that the claimant is disabled). Here, however, the ALJ's characterization of plaintiff's treatment as "conservative" is not wholly accurate because plaintiff pursued additional medical treatment not addressed by the ALJ. In addition to the hydrotherapy and chiropractic treatments referenced in the opinion, plaintiff also attended numerous doctors appointments, underwent various physical examinations and psychological evaluations, and was prescribed a variety of medications[6] to treat her impairments and pain. [AR

---

[5] Plaintiff's medical records indicate that she may have received epidural injections from Dr. Uwaydah prior to Dr. Sarafian's findings regarding plaintiff's risk factors. [AR at 209.]

[6] Plaintiff's prescription medications during the alleged period of disability included, among others, Prozac, Darvocet, Enalapril, Dyazide, Prevacid, Lorazepam, Soma, Zantac, Voltaren,

1  at 142-45, 148-50, 185-91, 216-20, 222-30, 244-49, 322-66, 370-94, 396-436.] As discussed
2  herein, plaintiff was not cleared for more intensive treatment, such as surgery, due to the various
3  risk factors highlighted by Dr. Sarafian. [AR at 356.] Further, the ALJ failed to explain how
4  plaintiff's discontinuation of one of her medications undermined her credibility regarding the extent
5  of her subjective symptoms during her alleged period of disability. To properly reject a plaintiff's
6  credibility, the ALJ must provide reasoning "sufficiently specific to permit the reviewing court to
7  conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50
8  F.3d 748, 750 (9th Cir. 1995). The Court cannot be confident that the ALJ did not improperly
9  discount plaintiff's credibility on the basis of her medical treatment since he misinterpreted the
10 extent of plaintiff's treatment and found that she refused treatment never actually prescribed.

11 "While an ALJ may certainly find testimony not credible and disregard it . . ., [courts] cannot
12 affirm such a determination unless it is supported by specific findings and reasoning." Robbins
13 v. Social Security Administration, 466 F.3d 880, 884-85 (9th Cir. 2006). The ALJ erred by failing
14 to provide clear and convincing reasons for discounting plaintiff's subjective testimony. Remand
15 is warranted on this issue.

17 **B.    LAY WITNESS STATEMENTS**

18 Plaintiff argues that the ALJ failed to properly consider the lay witness statements of
19 plaintiff's daughter, Raquel Acosta. [JS at 16.] The ALJ rejected Ms. Acosta's statements
20 regarding plaintiff's limitations, in part, because he found that they were inconsistent with the
21 medical evidence. [AR at 288.] As set forth below, the ALJ properly rejected Ms. Acosta's
22 statements.

23 On March 9, 2004, Ms. Acosta completed a Function Report Adult -- Third Party form
24 describing plaintiff's daily activities and abilities. [AR at 114-22.] Ms. Acosta reported that she has
25 known plaintiff for 29 years and spends two or three days a week with her. [AR at 114.] Ms.
26 Acosta asserted that plaintiff is unable to "keep her hands up to [sic] long" to care for her hair [AR

28 Lotensin, Pravachol, Ultram, and Glucovance. [AR at 176, 247.]

at 115], that she is unable to cook or prepare meals because "her arms hurt" [AR at 116, 118-19], and that she is only able to lift five to ten pounds. [AR at 119.] Regarding plaintiff's back problems, Ms. Acosta stated that plaintiff's back hurts when she sits, walks, stands, bends or squats, and that plaintiff needs to stand and sit while watching a movie. [Id.] Additionally, Ms. Acosta stated that plaintiff's "arms and back [are] in a lot of pain every day." [AR at 121.]

Lay witness testimony by family members who have the opportunity to observe plaintiff on a daily basis "constitutes qualified evidence" that the ALJ must consider. Sprague v. Bowen, 812 F.2d 1226, 1231-32 (9th Cir. 1987); see Dodrill, 12 F.3d at 919 ("An eyewitness can often tell whether someone is suffering or merely malingering. While this is particularly true of witnesses who view the claimant on a daily basis, the testimony of those who see the claimant less often still carries some weight."). To reject lay testimony, an ALJ must give reasons "germane to each witness" for doing so. Dodrill, 12 F.3d at 919. "One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). See also Carmickle v. Comm'r, Social Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (an ALJ's finding that a witness' lay testimony is inconsistent with the evidence is "a proper basis on which to reject [the] testimony" that is germane to the witness).

In rejecting Ms. Acosta's March 2004 report, the ALJ found that her statements regarding the extent of plaintiff's limitations were inconsistent with plaintiff's medical records reflecting plaintiff's complaints and treatment during the same time period. Specifically, the ALJ noted that plaintiff's medical records from 2004 indicated only "a transitory complaint about [her] hands in mid 2004, but [she] received no significant treatment and there was no indication of any further complaint or problem, and there was no indication of any problems with [her] spine or shoulders." [AR at 288, 432-35.] In highlighting the inconsistencies between Ms. Acosta's statements and plaintiff's 2004 medical records, the ALJ provided sufficient reasons germane to Ms. Acosta for rejecting her report. Lewis, 236 F.3d at 512. Remand is not warranted on this issue.

/
/
/

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate in order to properly consider plaintiff's credibility.[7] The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision. Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: October 14, 2009

/s/ Paul L. Abrams
_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[7] On remand, the ALJ is also instructed to reconsider the opinion evidence pertaining to plaintiff's psychological limitations. Specifically, the ALJ should address how the findings of Dr. B. John Shahin [AR at 322-40] impact the severity of plaintiff's depression and other psychological impairments. If the ALJ rejects Dr. Shahin's findings, he must provide specific and legitimate reasons for doing so. See 20 C.F.R. §§ 404.1527(d), 416.927(d). A conclusory assertion that Dr. Shahin relied on subjective tests in assessing plaintiff's psychological impairments will be deemed insufficient. See SSR 96-2p ("the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."). The ALJ need not reconsider the opinion of Dr. Uwaydah, one of plaintiff's treating physicians, as the ALJ's decision provided sufficient reasons for rejecting that opinion. [AR at 287-88.]